# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TIFFANY HOGANS, et al.,      )
                                     )
        Plaintiffs,            )
                                     )
        v.                   )        Cause No. 4:14-cv-1385 (JCH)
                                     )
JOHNSON & JOHNSON, et al.,     )
                                     )
        Defendants.        )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Motion to Remand, which Plaintiffs filed on August 15, 2014. (ECF No. 13). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

Plaintiffs filed their Petition in the Circuit Court for the City of St. Louis, Missouri on June 23, 2014. (Petition, ECF No. 6). There are 65 plaintiffs in this action. Each plaintiff claims that she used talcum powder products and that she "developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder . . . ."[1] (Petition ¶¶ 2-66). These claims are alleged to be the "direct and proximate result of Defendants' and/or their corporate predecessors [*sic*] negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the products known as Johnson & Johnson Baby Powder and Shower to Shower . . . ." (Petition ¶ 1). The link between talcum powder and ovarian cancer was allegedly first suggested by a study conducted in 1971. (Petition ¶ 79). Defendants are alleged to have had a duty to know of the carcinogenic properties

---

[1] One of the 65 plaintiffs brings a wrongful death claim on behalf of the estate of a woman who allegedly developed ovarian cancer as a result of using talcum powder. (Petition ¶ 20).

of talcum powder and to have "procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc."[2] (Petition ¶¶ 89, 91). The claims brought against Defendants based on these activities include failure to warn, negligence, breach of warranty, and civil conspiracy. (Petition at 51-58).

Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively the "J&J Defendants") removed the action to this Court on August 8, 2014, despite the lack of complete diversity on the face of the Petition. (Notice of Removal, ECF No. 1). Plaintiffs filed this Motion to Remand on August 15, 2014, and the J&J Defendants have filed a Response to the Motion. The J&J Defendants assert that removal is appropriate under the fraudulent misjoinder doctrine despite the lack of complete diversity.

## DISCUSSION

"Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand." *Manning v. Wal-Mart Stores East, Inc.*, 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)). The party invoking federal jurisdiction and seeking removal has the burden of establishing jurisdiction by a preponderance of the evidence. *Central Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009); *see also Nicely v. Wyeth, Inc.*, 2011 WL 2462060 at *2 (E.D. Mo. Jun. 17, 2011).

A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "Federal district courts have original jurisdiction in all civil actions between citizens of different states if the

---

[2] "Talc is the main substance in talcum powders." (Petition ¶ 72).

amount in controversy exceeds $75,000.00, exclusive of interest and costs."[3] *Manning*, 304 F. Supp. 2d at 1148 (citing 28 U.S.C. § 1332(a)(1)). Actions where jurisdiction is predicated solely on diversity are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). The diversity jurisdiction statute has also been interpreted to require complete diversity, which means that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). The J&J Defendants assert that this situation falls within the contours of the fraudulent misjoinder doctrine, which, where it has been adopted, is an exception to the requirement of complete diversity.

"Courts have long recognized fraudulent joinder as an exception to the complete diversity rule." *In re Prempro Products Liability Litigation*, 591 F.3d 613, 620 (8th Cir. 2010) (citing *14B* Charles Alan Wright et al., *Federal Practice and Procedure* § 3723 (4th ed. 2009)). "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *Id.* Fraudulent misjoinder is a more recent exception to the complete diversity rule. *Id.* "Fraudulent misjoinder 'occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other.'" *Id.* (quoting Ronald A. Parsons, Jr., *Should the Eighth Circuit Recognize Procedural Misjoinder?*, 53 S.D. L. Rev. 52, 57 (2008)).

The Eighth Circuit has acknowledged the fraudulent misjoinder doctrine but has declined to either adopt or reject it. *See Prempro*, 591 F.3d at 622. When presented the opportunity to adopt the doctrine in *Prempro*, the court concluded that the facts of the case did not warrant

---

[3] There is no dispute in this case that the amount in controversy exceeds $75,000.

application of the doctrine even if it were to be adopted. *Id.* The court began its reasoning with the observation that the Eighth Circuit uses "a very broad definition for the term 'transaction[,]'" as that term applies in the context of permissive joinder under Fed. R. Civ. P. 20. Specifically, the term may be understood to "comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id*. The *Prempro* court then took account of the second requirement for permissive joinder under Rule 20—the existence of "common questions of law and fact." *Id.* at 623. The court also observed that the question of whether joinder is proper under Rule 20 is distinct from that of whether a party has been fraudulently misjoined, *i.e.*, that something more than a mere procedural impropriety is required for fraudulent misjoinder to apply. *See id.* at 623-24 (finding that despite the inapplicability of fraudulent misjoinder, "[i]t may be that the plaintiffs' claims are not properly joined"). Fraudulent misjoinder can only be applied where there is evidence of bad faith and "evidence that plaintiffs' misjoinder borders on a sham." *See id.* at 623, 624 (internal quotation marks omitted). For instance, fraudulent misjoinder may be applicable where there is "'no real connection'" between plaintiffs' claims. *See id.* at 621 (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996)).

The *Prempro* plaintiffs all claimed that "they or a decedent family member had developed breast cancer from taking [hormone replacement therapy ("HRT")] medications." *Id.* at 617. A link between HRT drugs and breast cancer was allegedly discovered in a study conducted by the Women's Health Initiative, the results of which were published in 2002 in The Journal of the American Medical Association. *Id.* The plaintiffs brought claims against several manufacturers of HRT drugs. *Id.* The claims included "state law claims for negligence, strict liability, breach of implied warranty, breach of express warranty, fraud, negligent

misrepresentation, and statutory violations of the False and Misleading Advertising Act, the Prevention of Consumer Fraud Act, and the Uniform Deceptive Trade Practices Act." *Id.*

The *Prempro* court found that the plaintiffs' claims all arose from a series of transactions between the HRT manufacturers and the HRT users because the plaintiffs alleged that "the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs." *Id.* at 623. This finding was further supported by the plaintiffs' allegation that each "developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs." *Id.* The court also found that there was likely to be common questions of law and fact between the claims, such as the causal link between HRT drugs and breast cancer. *Id.* Based on these findings, the *Prempro* court was unable to conclude that the plaintiffs' claims had "'no real connection' to each other such that they [were] egregiously misjoined." *Id.* This was true despite the fact that "[s]ome of the plaintiffs allege[d] to have taken several HRT drugs made by different manufacturers." *Id.*

The facts here are substantially indistinguishable from *Prempro*. Plaintiffs have alleged joint action between the Defendants in the manufacturing, testing, promoting, warning, marketing, and selling of products containing talcum powder. They claim that the main substance in talcum powder has long been linked with an increased risk of ovarian cancer, that Defendants at least should have known about that increased risk, and that Defendants acted in concert to conceal the information from consumers. Plaintiffs have all allegedly used talcum powder in a similar manner, albeit for different periods of time, and they have all allegedly developed ovarian cancer as a result. While the J&J Defendants are correct that there may be some differences between each of the Plaintiffs' claims, the similarity to the facts in *Prempro*

requires the conclusion that there is a logical connection between the claims such that the fraudulent misjoinder doctrine, even if it were adopted, is inapplicable.

The J&J Defendants contend, for the following reasons, that the Eighth Circuit would reconsider *Prempro* if given the opportunity: (1) that *Prempro* effectively eliminated the "same transaction" prong of the joinder inquiry; (2) that a showing of mere procedural impropriety rather than egregiousness or bad faith is more fitting for the application of procedural misjoinder; and (3) that cases such as this, which are carefully structured to avoid diversity jurisdiction, are egregious *per se*. (J&J Response, ECF No. 22, at 13-14). In support of their contention, the J&J Defendants cite several post-*Prempro* cases, all of which are from districts outside the Eighth Circuit.

None of the reasons given is persuasive. The first rests on misreading of *Prempro*; the second on a misunderstanding of the nature of federal jurisdiction; and the third on an inadequate appreciation of a plaintiff's right to select a forum. Moreover, decisions calling into question *Prempro*'s persuasiveness in the Eastern District of New York, the District of New Jersey, the District of Nevada, and the Southern District of West Virginia are not sufficient indicators that the Eighth Circuit Court of Appeals is likely to alter a precedent that has been applied consistently in the Eighth Circuit.

Complete diversity does not exist, and the facts of this case do not warrant application of the fraudulent misjoinder doctrine.


Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Motion to Remand, (ECF No. 13), is **GRANTED**, and this matter is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri.

Dated this 24th day of September, 2014.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE